IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


EDWIN C. BICKELL,                           )
                                            )
            Plaintiff                       )       Civil No. 06-6023-CL
                                            )
        v.                                  )       FINDINGS AND
                                            )       RECOMMENDATION
MICHAEL J. ASTRUE,                          )
Commissioner of Social Security,            )
                                            )
            Defendant.                      )


ALAN STUART GRAF
P.O. Box 98
Summertown, Tennessee 38483

        Attorney for Plaintiff


KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

STEPHANIE R. MARTZ
Special Assistant U.S. Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

        Attorneys for Defendant

CLARKE, Magistrate Judge:

Plaintiff Edwin Bickell seeks judicial review of the Social Security Commissioner's final decision denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). For the reasons below, I recommend the Commissioner's decision be affirmed.

## BACKGROUND

Born in 1957, Bickell completed a general equivalency degree. Tr. 76, 94.[1] Between 1992 and 2001 Bickell worked as a wastewater technician, operations director, and supervisor. Tr. 89.

Bickell filed an application for DIB on October 31, 2001, alleging disability since March 21, 2001, due to back injuries, including "degenerative disc disease, facet disease, sciatica, scoliosis," as well as a torn hamstring, tarsal tunnel syndrome, and depression. Tr. 76, 78, 88.

Bickell's application was denied initially and upon reconsideration. Tr. 60-64, 67-69. On June 15, 2004, a hearing was held before an Administrative Law Judge ("ALJ"). Tr. 464-566. The ALJ subsequently found that Bickell could perform significant work in the national economy and therefore found him not disabled. Tr. 21-40. The Appeals Council accepted additional evidence into the record, but denied review on December 2, 2006, making the ALJ's decision the final decision of the Commissioner. Tr. 9-12. Bickell seeks review of this finding.

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer June 1, 2006 (Docket #10).

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Bickell challenges the ALJ's evaluation of the evidence and his conclusions at step five.

At step one, the ALJ determines if the claimant is performing substantial gainful activity ("SGA"). If so, then the claimant is not disabled. 20 C.F.R. § 404.1520(4)(i).

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the 12 month duration requirement. 20 C.F.R. §§ 404.1509; 404.1520(4)(ii). If the claimant does not have such a severe impairment, then he is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 404.1520(4)(iii). If the impairment is determined to meet or equal a listed impairment, then the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. § 404.1520(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). The ALJ uses this information to determine if the claimant can perform past relevant work at step four. 20 C.F.R. § 404.1520(a)(4)(iv).

3 - FINDINGS AND RECOMMENDATION

At step five, the Commissioner must determine if the claimant is capable of performing

work existing in the national economy. *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094,

1099 (9th Cir.1999); 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at

1098.  If the process reaches step five, the burden shifts to the Commissioner to show that "the

claimant can perform some other work that exists in "significant numbers" in the national

economy, taking into consideration the claimant's residual functional capacity, age, education,

and work experience." *Id.* at 1100.  If the Commissioner meets this burden the claimant is not

disabled.  20 C.F.R. §§ 404.1566, 404.1520(g).

## THE ALJ'S FINDINGS

At step two in the sequential proceedings, the ALJ found Bickell's "low back strain and

other musculoskeletal problems; obesity; situational depression; and a personality disorder with

dependent features impairments that are collectively "severe" (but as discussed below not

necessarily individually . . . )." Tr. 23.  He found that these impairments did not meet or equal a

"listed" impairment at step three in the proceedings.

The ALJ assessed Bickell's RFC:

> The claimant has the residual functional capacity to lift up to 20
> pounds occasionally and 10 pounds frequently.  He can sit, stand
> and walk up to six hours a day each.  He is limited to occasional
> bending from the floor to waist level, and twisting.  He requires the
> flexibility to shift positions from sitting to standing with relative
> frequency.

Tr. 40.  The ALJ found that this RFC did not allow Bickell  to perform his past relevant work at

step four, but found that he could perform significant jobs in the national economy at step five.

4 - FINDINGS AND RECOMMENDATION

*Id.* The ALJ therefore found Bickell not disabled. *Id.*

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court may weigh "both the evidence that supports and [that which] detracts from the Commissioner's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir 1989). The reviewing court "may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Magallanes*, 881 F.2d at 750; *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Bickell claims the ALJ erred at step two in the sequential proceedings by failing to find his alleged mental impairments "severe." He also claims the ALJ erroneously concluded he could perform work in the national economy at step five. Bickell specifically claims the ALJ improperly assessed his credibility, improperly evaluated the medical evidence, and relied upon an inaccurate RFC in his hypothetical questions to the vocational expert.

### I.   The ALJ's Step Two Finding

#### A.   Step Two Evaluations

At step two in the sequential proceedings, the ALJ determines if the claimant has a "severe" impairment. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is "severe" if it

"significantly limits your ability to do basic work activities." 20 C.F.R. § 404.1520(c), *see* also

404.1521. Such an impairment must last, or be expected to last, twelve months. 20 C.F.R. §

404.1509. The onset of the impairment must precede the claimant's date last insured for DIB. 20

C.F.R. § 404.404.131.

### B.    Discussion

The ALJ found Bickell's mental impairments, including his "situational depression" and

"personality disorder with dependent features" "severe" at step two in combination with his other

impairments. Tr. 23.  The ALJ stated that these impairments are "collectively 'severe' (but as

discussed below not necessarily individually, an issue discussed in greater detail below)." Tr. 23.

Bickell does not address the collective aspect of the ALJ's finding, instead asserting that

the ALJ did not find his mental impairments "severe" at step two. Pl. Opening Br. 21-25.  This

submission is not based upon the record.

Here, the ALJ found Bickell's mental impairments severe at step two and went on to

consider Bickell's mental impairments in his subsequent analysis. The ALJ's analysis at steps

four and five must consider all of a claimant's impairments, both severe and non-severe.  20

C.F.R. § 404.1545(a)(2).  Because the ALJ proceeded beyond step three, any omission regarding

a singular severity finding at step two is inconsequential.  Bickell's challenge is not based upon

the record and   therefore fails.

### II.    Credibility

The ALJ found that Bickell's "testimony and other allegations are not credible, and his

deceptions possibly rise to the level of malingering." Tr. 40.  Bickell's challenge asserts that the

ALJ improperly rejected his "complaints," and made an improper malingering suggestion. Pl. Opening Br. 28. Bickell also challenges the ALJ's inference that Bickell's reports of termination from his job and his work history contradict his disability claim. Pl. Opening Br. 29-30. Finally, Bickell challenges the ALJ's suggestion of secondary gain and misrepresentation on his application for unemployment benefits.

###     A.     Legal Standard

Once a claimant has shown an underlying impairment, the ALJ may not reject symptom testimony without specific findings showing clear and convincing reasons for doing so. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996), *affirming Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986). The ALJ furthermore may not reject symptom testimony because the medical record does not corroborate the severity of the claimant's reported symptoms. *Id.* The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). In making credibility findings, the ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* If the ALJ's credibility decision is supported by the record, the reviewing court may not engage in second guessing. *Thomas v. Barnhart*, 278 F.d 947, 959 (9th Cir. 2002).

///

**B.    Discussion**

*i.    ALJ's Rejection of Bickell's "Complaints"*

Bickell cites the legal standard governing an ALJ's credibility decision.  Pl. Opening Br. 27.  He does not identify specific complaints erroneously rejected by the ALJ under this standard. The ALJ's reasons for rejecting Bickell's testimony, including his myriad "complaints," are addressed sequentially.

*ii.    Malingering*

Bickell contends the ALJ erroneously found malingering, suggesting, "malingering is a medical diagnosis."  Pl. Opening Br. 28.  Bickell offers no legal authority for this proposition. *Id.*  In the context of social security disability determinations, an ALJ need only point to "affirmative evidence" of malingering.  *Smolen*, 80 F.3d at 1283-84.  Ninth Circuit authority does not establish that malingering in this context must be established by a physician.

The ALJ discussed malingering:

> While the claimant's presentations to Dr. Seals and others appears to have been fairly convincing superficially, his deception is readily apparent when the many inconsistencies between his statements and demeanor over time are brought to light, particularly the difference between his representations before and after Dr. Glassman released him to return to work in September 2001.  Additionally, there is a clear secondary gain component related to the claimant's decision to pursue a disability claim at that time rather than reenter the workforce.  He also has not been compliant with treatment.  Under the circumstances described above "malingering should be strongly suspected," according to the Diagnostic and [S]tatistical Manual of Mental Disorders, Fourth Edition (page 683).

Tr. 29.

8 - FINDINGS AND RECOMMENDATION

Here, the ALJ did not make an identifiable malingering finding which precluded further credibility analysis. Tr. 29. His findings conclude only that Bickell's "deceptions possibly rise to the level of malingering." Tr. 40. Bickell's inconsistent testimony and the ALJ's secondary gain inference are discussed in detail below. The ALJ's present inference does not amount to a finding. Additionally, the ALJ offered further credibility discussion. This court finds the ALJ's malingering inference based upon the record, and furthermore finds that the ALJ did not inappropriately truncate his credibility analysis with a malingering finding.

### iii.    *Bickell's Work History*

Bickell contends that the ALJ "ignored" his work history and that this constitutes error. Pl. Opening Br. 30. Bickell specifically points to his earnings records which suggest consistent employment. *Id.* The ALJ did not ignore Bickell's work history. The ALJ discussed Bickell's work history in detail throughout his decision. Tr. 23-26, 38.

An ALJ may consider a claimant's work history in making a credibility decision. *Smolen*, 80 F.3d at 1284. A positive work history generally supports a positive credibility finding. *See Thomas*, 278 F.3d at 959. However, a positive work history does not necessitate a positive credibility finding. The ALJ's consideration of Bickell's work history is based upon the record and should be sustained.

### iv.    *Bickell's Contradictory Reports*

The ALJ found that Bickell offered contradictory testimony regarding his job termination, pain, and resulting limitations throughout the record. Tr. 23, 25-26, 34, 36.

Bickell first states that the ALJ found "it was unlikely that the Plaintiff would have been

hired in the first place if his new boss had concerns about his medical condition." Pl. Opening
Br. 29, citing tr. 23. The ALJ noted that Bickell reported his March 2001 termination to a
physician, and "did not attribute the termination to a medically-related inability to function on
that occasion." Tr. 23, citing Exhibit 11F, page 2 (tr. 201).

The ALJ's indicated citation shows that Bickell told a medical examiner, neurologist Dr.
Englander, in June 2001 that his "symptoms have remained static" since March 2001. Tr. 201.
Dr. Englander does not suggest that Bickell indicated termination for medical reasons. *Id*. The
ALJ's inference that Bickell did not tell Dr. Englander he was laid off for medical reasons is
based upon the record and should be sustained.

The ALJ then noted that "some time later at the hearing, [Bickell] testified that his
employer gave him no reason for being fired. However, he alleged that his former employer
observed him 'dragging his left leg,' implying that his physical problems might have been a factor
in the dismissal." Tr. 23. At his hearing, Bickell testified that his employer "wouldn't give" him
an official reason for his termination, but that "two things were happening." Tr. 502. Bickell
stated that he was "literally dragging my left leg, walking around. I couldn't pick it up any
longer." *Id*. Bickell also described an incident with another employee regarding religious
references on a t-shirt.

This testimony does not establish that Bickell was terminated due to his alleged disability.
The ALJ appropriately noted that Bickell's report that he was terminated because he couldn't
"pick up" his leg is not supported by Bickell's concurrent reports to physicians. For this reason,
the ALJ's reference to Bickell's contradictory statements and presentation should be sustained.

10 -  FINDINGS AND RECOMMENDATION

Bickell also suggests the ALJ's reference to his use of a TENS unit did not support the ALJ's finding that Bickell "embellished" his claim. Pl. Opening Br. 31. The ALJ noted that Bickell reported using a TENS unit in October 2001, and that at this time he did not have a prescription for the device. Tr. 26-27. The medical record does not confirm Bickell's use of the device during this period; therefore the ALJ's inference that the record contradicts Bickell's report should be sustained.

Bickell finally challenges the ALJ's suggestion that Bickell exhibited a "dramatic shift" in his presentation in order to support his disability claim. Pl. Opening Br. 29, 30, citing tr. **25, 212** The ALJ stated that "The claimant's allegations to [general physician] Dr. Seals on October 1, 2001, amounts to a dramatic shift in the nature and severity of his complaints." Tr. 25. The ALJ explained,

> [Bickell] specifically acknowledged to Dr. Seals that his reports of debilitating back pain were linked to Dr. Glassman having just released him to return to work (Exhibit 25F, page 28). He then proceeded to report to her far more debilitating physical limitations than he had previously stated to any medical provider. He alleged that he could do only minimal standing (a maximum of 5 minutes), and even had difficulty sitting, a complaint not previously documented. These allegations are in stark contrast to Dr. Glassman's assessment five days earlier, at which time the only factor that apparently aggravated the claimant's pain was prolonged walking (Exhibit 14F, page 24).

Tr. 25.

The ALJ may consider such contradictory reporting by the claimant. *Smolen*, 80 F.3d at 1280, 1284. The ALJ's findings above are based upon the record and should be sustained.

///

11 - FINDINGS AND RECOMMENDATION

### v. *Secondary Gain*

Bickell challenges the ALJ's secondary gain inference. Pl. Opening Br. 31. The ALJ observed that treating rehabilitation specialist Dr. Glassman released Bickell to work in September 2001 and noted, "there is a clear secondary gain component related to the claimant's decision to pursue a disability claim at that time rather than re enter the workforce." Tr. 29.

Generally, this court does not chastise disability applicants for secondary gain: an application for benefits, by definition, is an application for monetary compensation. *Ratto v. Secretary of Health and Human Services*, 839 F. Supp. 1415, 1428 (D. Or. 1993). This reasoning should not be sustained.

### vi. *Unemployment Application*

The ALJ finally noted that Bickell reported receiving unemployment benefits in June 2002, suggesting another inconsistency in Bickell's presentation. Tr. 31, citing Exhibit 23F, page 21 (tr. 303). Bickell challenges this finding. This court cannot review any unemployment application Bickell made or benefits awarded. Therefore, this finding is also not sustained.

### C.    Credibility Conclusion

The ALJ's credibility conclusion essentially rests upon Bickell's contradictory statements. The ALJ made no formal malingering finding, and, except as noted, made appropriate credibility considerations based upon Bickell's contradictory statements. This court does not sustain inferences of secondary gain predicated upon a claimant's application for benefits and is unable to review Bickell's unemployment application. The ALJ's remaining credibility discussion and his conclusion is adequately based upon the record, however, and his overall credibility decision

finding Bickell's allegations not credible should be sustained.

## II.     Medical Source Statements

Bickell's credibility challenge concurrently claims the ALJ improperly rejected the

opinions of examining psychologist Dr. Moulton and treating physician Dr. Seals.  Pl. Opening

Br. 25.  Bickell states, "The ALJ did rejected the opinions of Dr. Moulton and Dr. Seals mostly

because he believe that the Plaintiff engaged in a 'fairly sophisticated and elaborate deception.'"

Pl. Opening Br. 26.  Bickell does not develop his argument regarding Dr. Moulton and only

briefly addresses Dr. Seals.  Pl. Opening Br. 31.

### A.     Legal Standard

A treating physician's opinion is generally accorded greater weight than an examining

physician's opinion. *Edlund*, 253 F.3d at 1157.  The ALJ must give specific, legitimate reasons

supported by substantial evidence for rejecting a controverted opinion from a treating physician

and "clear and convincing reasons" for rejecting an uncontroverted opinion. *Bayliss v. Barnhart*,

427 F.3d 1211, 1216 (9th Cir. 2005).  This evaluation may "set out a detailed and thorough

summary of the facts and conflicting clinical evidence." *Magallanes*, 881 F.2d at 751.  The

opinion of the treating physician, however, is not necessarily conclusive to the ultimate issue of

disability which is reserved for the Commissioner to decide.  20 C.F.R. § 404.1527(c)(1).

### B.     Discussion

#### a.     Treating Physician Dr. Seals

Bickell offers no substantive argument regarding his allegation that the ALJ "found Dr.

Seals not credible."  Pl. Opening Br. 31.  The ALJ did not "discredit" Dr. Seals.  The ALJ

reviewed Dr. Seals's records showing Bickell's reports of low back pain, and her findings that he had obesity, high blood pressure, depression, and a chronic pain syndrome. Tr. 25-30. These findings are based upon the record. Tr. 325- 51.

The ALJ then noted that he found Bickell not credible and rejected Dr. Seals's conclusions premised upon Bickell's reports. Tr. 29. An ALJ may reject a physician's opinion predicated upon reports of a claimant found not credible. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Disability opinions are furthermore reserved for the Commissioner. 20 C.F.R. § 404.1527(e)(1). Because this court finds that the ALJ's credibility decision should be sustained, this court finds that his subsequent analysis of Dr. Seals's disability opinion should be sustained as well.

### b.   Treating Physician Dr. Glassman

Bickell contends the ALJ's RFC assessment did not adequately include all limitations indicated by rehabilitation specialist Dr. Glassman. Bickell submits, "The ALJ rests his RFC on the physical capacity evaluation performed by the occupational therapist and Glassman's closing examination which was based on that evaluation." Pl. Opening Br. citing tr. 28. The indicated transcript excerpt makes no reference to a succinct RFC finding, Dr. Glassman, or physical capacity evaluations. Tr. 28.

The ALJ did not state that his RFC assessment was exclusively based upon Dr. Glassman's report. The ALJ discussed Dr. Glassman's report in detail and later assessed Bickell's RFC. Tr. 24, 38, 40. Dr. Glassman's report and other physical capacity evaluations are discussed separately.

### i.    *Dr. Glassman's Treatment Notes*

Dr. Glassman treated Bickell between October 2000 and September 2001. Tr. 216-232. Upon discharge on September 26, 2001, Dr. Glassman reviewed Bickell's September 14, 2001 physical capacity evaluation. Tr. 216.

Upon examination, Dr. Glassman assessed Bickell with "left tarsal tunnel syndrome, resolved, both symptomatically and objectively" and "left hamstring strain with persistent pain. No evidence of tendon avulsion." Tr. 217. Dr. Glassman concluded, "As far as work is concerned, I will get a level 2 physical capacity evaluation with narrative from Mercy Institute of Rehabilitation to better discern his work abilities." *Id.* This indicates that Dr. Glassman did not consider his September 26, 2001, report conclusive regarding Bickell's work restrictions.

The ALJ's review of Dr. Glassman's treatment notes adequately encompasses Dr. Glassman's findings.

### ii.    *Physical Capacity Evaluations*

Bickell contends the ALJ erroneously omitted Dr. Glassman's restrictions in his RFC assessment. Pl. Opening Br. 32. Bickell specifically contends that Dr. Glassman's report establishes that Bickell's physical capacity testing indicated that "exertion performed could not be sustained eight hours a day, five days a week." Pl. Opening Br. 32 *citing* tr. 212.

The indicated transcript states, "Mr. Bickell is able to work at a sedentary level for 2 hours continuously and 8 hours with rests." Tr. 212. Bickell's submission is not supported by the record and therefore fails. Bickell's additional submissions that his own testimony contradict physical capacity testing are also unsupported by the record as the ALJ found Bickell's

allegations not credible.

In conclusion, the ALJ appropriately relied upon Dr. Glassman's supported findings in reaching his RFC assessment. RFC determinations must be based upon the record as a whole and are furthermore reserved for the ALJ to determine. 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c).

     **c.**      **Examining Psychologist Dr. Moulton**

Bickell submits, "In sum, the ALJ did not give clear and convincing reasons for rejecting . . . the opinions of [Bickell's] . . . examining psychologist." Pl. Opening Br. 34. He offers no identifiable argument for his submission that the ALJ erroneously rejected the opinion of examining psychologist Dr. Mouton.

Dr. Moulton evaluated Bickell in March 2004. Tr. 392-414. Dr. Moulton performed a clinical examination and associated psychological testing. He assessed Bickell with major depressive disorder, which he characterized as "recurrent, severe," pain disorder, and a personality disorder. Tr. 404.

The ALJ reviewed Dr. Moulton's report, noting Bickell's inconsistent statements to Dr. Moulton regarding academic performance, his weight, and his reports that he could lift "850 pounds" and pick up a horse. Tr. 33. The ALJ also cited Dr. Moulton's citation to Bickell's inconsistent pain behavior during his interview. Tr. 34. The ALJ finally noted Dr. Moulton's mental residual functional capacity ("MRFC") assessment. *Id.*

The ALJ concluded,

> [T]he level of limitation described [in the MRFC report] is not
> consistent with Dr. Moulton's narrative report. Moreover it is clear

> that the examiner in significant part based the . . . functional
> assessment on the apparent pain exhibited by Mr. Bickell during
> the examination (Exhibit 31F, page 15).

Tr. 34.

### C.    Conclusion: Medical Source Statements

In summary, the ALJ's review of the medical record is based upon the record and the

appropriate legal standards.  If two plausible interpretations arise, this court must refer to the

ALJ's reading of the record.  *Magallanes*, 881 F.2d at 750; *see also Batson*, 359 F.3d at 1193.

The ALJ's analysis of the medical record should be sustained.

### III.   Lay Witness Testimony

Bickell challenges the ALJ's evaluation of lay witness testimony submitted by "each one

of the many lay witnesses listed." Pl. Opening Br. 35.  Bickell's argument does not identify

individuals or specific flaws in the ALJ's reasoning regarding individuals.  *Id.*  The ALJ assessed

the lay witness testimony:

> The claimant has persuaded various third parties to provide
> statements that attest to his disability.  These include statements
> from Mr. and Mrs. Widmer (Exhibits 6E and 12E); Howard Lash
> (Exhibit 14E); Karen Crouch (Exhibit 15E); and Valarie Sutton
> (Exhibit 16E).  All of these parties state that Mr. Bickell presents
> as a person physically feeble, mentally depressed, and apparently in
> chronic pain.  Unfortunately, these several statements are
> insufficient to overcome other concerns about the claimant's
> credibility noted though out [sic] this decision.  It is accepted that
> the claimant fairly consistently presents as a disabled person to
> medical providers and others.  The record also shows that he is
> fairly sophisticated and elaborate in his deceptions.  Thus, the
> aforementioned statements confirm that Mr. Bickell presents to his
> friends as being disabled; but the overall evidence in this case
> shows that while good intentioned they have been deceived.

Tr. 36.

A.    **Analysis**

The ALJ has a duty to consider lay witness testimony.  20 C.F.R. §§ 404.1513(d);

404.1545(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  Friends and family members

in a position to observe the claimant's symptoms and daily activities are competent to testify

regarding the claimant's condition.  *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  The

ALJ may not reject such testimony without comment, but may reject lay testimony inconsistent

with the medical evidence.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Lewis*, 236

F.3d at 512.  If an ALJ rejects lay witness testimony entirely, he must give reasons germane to

the witness.  *Nguyen*, 100 F.3d at 1467.

B.    **Discussion**

a.    **The ALJ's Evaluation of Lay Witnesses**

The ALJ made his lay witness determination primarily because he found the lay witness

testimony predicated upon Bickell's presentation, which he found not credible.  The ALJ

accorded the third party statements "limited weight," which is not an outright rejection.  Tr. 36.

Therefore, he was not required to cite a "germane" reason for discrediting each witness.

Jan Widmer stated Bickell experiences debilitating pain which precludes performance of

household chores and limits daily activities to taking medication and napping.  Tr. 126, 129.

Howard Lash stated that Bickell has difficulty concentrating due to depression and that "when

[Bickell] does stand, he is often nearly doubled over in pain and has to lean over a table to

support himself."  Tr. 148.  Karen Crouch stated that, "even minimal physical effort results in

severe pain and fatigue," and that "most of the time he uses a cane; often, due to intense pain, he is compelled to use a wheelchair." Tr. 149.

Valarie Sutton stated that, Bickell "was forced to sleep on the floor . . . and crawl to the bathroom or use a bedpan, because he could not stand up in order to use a walker for assistance" and that he can no longer "walk for any distance past 30 feet without intense pain . . so he is having to use a wheelchair for any normal activities." Tr. 150.

The medical record does not support these statements. No physician suggested Bickell's pain precludes all daily activities, or that he must use a wheelchair, bedpan, or walker. Furthermore, physical capacity testing performed in September 2001 showed that Bickell could perform sedentary work and sit, stand, and walk two hours at a time before rest was needed. Tr. 212, 216. The ALJ may reject third party statements inconsistent with the medical evidence. *Lewis*, 236 F3d at 512. For this reason, the ALJ's rejection of the limitations assessed by these third party witnesses should be sustained.

### b.    Evidence Submitted to the Appeals Council

Bickell also submits that evidence submitted to the record post-hearing and accepted by the Appeals Council establishes his disability. Pl. Opening Br. 35. In reviewing evidence submitted to the appeals council, this court must consider whether such evidence would "provide a basis for changing the hearing decision." *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993).

The statements submitted by Karen Crouch, Coleen Widmer, and vocational counselor Mary Worthington do not establish new substantiated observations and furthermore contradict the supported medical record. Tr. 432-35. Therefore, the Appeals Council appropriately found

that these statements did not undermine the ALJ's decision. *Ramirez*, 8 F.3d at 1452.  Bickell's

argument that this court should credit such evidence fails.

### C.     Conclusion: Lay Witness Statements

In summary, the record does not support the allegations of the many lay witnesses in this

case.  The ALJ may reject lay witness testimony inconsistent with the medical evidence. *Lewis*,

236 F3d at 512.  For this reason, the ALJ's evaluation of the lay witness testimony should be

sustained.  This court is furthermore not persuaded that statements submitted to the Appeals

Council undermine the ALJ's decision.

### CONCLUSION

In conclusion, Bickell has not established that his condition prevents him from

performing work in the national economy at step five.  All of plaintiff's arguments have been

considered, and, except as noted, this court finds them unpersuasive. This court finds that the

ALJ based his findings upon substantial evidence under the proper legal standards.

### RECOMMENDATION

This court finds that the Commissioner's decision that Bickell did not suffer from

disability and is not entitled to benefits under Title II of the Social Security Act is based upon

correct legal standards and recommends the Commissioner's decision be AFFIRMED.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit*

*Court of Appeals*.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate

Procedure, should not be filed until entry of the district court's judgment or appealable order.

*Objections to these Findings and Recommendation, if any, are due on  June 19 , 2007.  If*

*objections are filed, any responses to the objections are due 14 days after the objections are*

*filed*.  Failure to timely file objections to any factual determinations of the Magistrate Judge will

be considered a waiver of a party's right to de novo consideration of the factual issues and will

constitute a waiver of a party's right to appellate review of the findings of fact in an order or

judgment entered pursuant to the Magistrate Judge's recommendation.


DATED this _____ day of June, 2007.

Mark Clarke
United States Magistrate Judge

21 -  FINDINGS AND RECOMMENDATION